# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 16-1345V
### (not to be published)

* * * * * * * * * * * * * * * * * * * * * * * *
|   |   |
|---|---|
| LINDA ADKINS GREER, *as legal representative of the* ESTATE OF MICHAEL STEPHEN GREER, *deceased*, | Special Master Corcoran |
| Petitioner, | Filed: January 17, 2018 |
| v. | Decision; Final Attorney's Fees and Costs; Local Versus Forum Rates. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Milton Clay Ragsdale*, IV, Ragsdale LLC, Birmingham, AL, for Petitioner.

*Colleen C. Hartley*, U. S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART ATTORNEY'S FEES AND COSTS [1]

On October 14, 2016, Linda Greer, on behalf of Michael Greer, deceased, filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program"), alleging that the influenza ("flu") vaccine Mr. Greer received on October 22, 2014, caused him to develop Transverse Myelitis, ultimately leading to his death.[2] On April 27, 2017,

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

the parties filed a joint stipulation, awarding lump sum damages of $405,000.00 to Petitioner (ECF No. 17), and I issued an order concluding proceedings on the same day (ECF No. 18).

Petitioner has now filed a motion requesting final attorney's fees and costs, dated September 25, 2017. *See* Motion for Attorney's Fees, dated Sept. 25, 2017 (ECF No. 23) ("Fees App."). Petitioner requests reimbursement of attorney's fees and costs in the total amount of $62,033.99 (representing $59,866.75 in attorney's fees, plus $2,167.24 in costs). *Id.* at 1; *see also* Pet'r's Brief in Support of Fees App. (ECF No. 27) at 16-17. For the reasons stated below, I hereby grant the motion in part, awarding a total sum of **$60,733.99** (representing $58,566.75 in attorney's fees, plus $2,167.24 in costs).

## Factual and Procedural Background

The primary attorneys to have worked on this case were Clayton Ragsdale and Alison Riley of the law firm Ragsdale LLC (the "Ragsdale Firm"), in Birmingham, Alabama. The billing invoices filed in connection with the present fee request reveal the work they performed on the matter. *See generally* Ex. A to Fees App at 1-14 (ECF No. 23-1). According to the billing record, Petitioner originally brought this claim to a different attorney—Ms. Elizabeth Chambers—who completed some work on the vaccine claim before referring the case to the Ragsdale Firm. *See* Ex. A to Fees App. at 14. Ms. Chambers and her associate, Ms. Alyssa Daniels, also completed estate work associated with this matter. *Id.*

The Ragsdale Firm began working on the case in February 2015—nearly a year and a half prior to its filing. *See* Ex. A to Fees App. at 1. Throughout that time period, the majority of work performed included reviewing medical records, as well as communicating with Petitioner and reviewing relevant case law. There is little evidence in the billing record that the Ragsdale Firm attorneys were overworking the case prior to its initiation.

Thereafter, the case proceeded in a timely manner. Petitioner filed a joint statement of completion on October 19, 2016 (ECF No. 9). On January 6, 2017, I issued an order at the parties' request suspending the deadline for Respondent's Rule 4(c) Report to allow the parties ample time to discuss settlement. The parties filed a joint stipulation on April 27, 2017 (ECF No. 17), which I adopted as my decision.

## Fees Request

Petitioner requests total reimbursement of attorney's fees and costs in the total amount of $62,033.99 (representing $59,866.75 in attorney's fees, plus $2,167.24 in costs). *Id.* at 1; *see also* Pet'r's Brief in Support of Fees App. (ECF No. 27) at 16-17. Petitioner incurred $56,517.39 in

fees and costs up until the filing of the fees application, (and an additional amount of $5,516.60 while complying with a court order directing briefing of two issues discussed below).

With respect to the fees side of the present request, Petitioner specifically requests $385 per hour for Mr. Milton Ragsdale (a partner with thirty-five years of experience) for work performed in 2015-2016, and $400 per hour for work performed in 2017. Fees App. at 4. Petitioner requests $225 per hour for Ms. Allison Riley (an associate with six years of experience) for work performed in 2015, $250 per hour for work in 2016, and $270 per hour for work in 2017. *Id.* Lastly, Petitioner requests rates of $125 per hour for worked performed by two paralegals in 2015, and $135 per hour for work completed in 2016-2017. *Id.*

In addition, Petitioner requests compensation for the work of two estate attorneys (representing $3,652.50 for estate work and $4,517.50 for vaccine claim work). According to the billing record, Petitioner originally brought this claim to Ms. Elizabeth Chambers, who completed some work on the vaccine claim before referring the case to the Ragsdale Firm. *See* Ex. A to Fees App. at 14. Petitioner requests $325 per hour for Ms. Chambers (a partner with fourteen years of experience) for work performed in 2015-2017. *Id.* In addition, Petitioner requests $275 per hour for Ms. Alyssa Daniels (an associate with eight years of experience) for work performed in 2015. *Id.*

The requested estate fees include 11.7 hours of attorney work (8.7 for Ms. Chambers and 3.0 for Ms. Daniels), beginning in March 2015 and ending in June 2016. Ex. A to Fees App. at 14. According to the billing logs, the work consists mainly of conferring with the Greer family, drafting documents pertaining to opening and closing the estate, and meeting with the Greer family to disburse funds.[3] *Id.* More specifically, Ms. Chambers billed 7.7 hours for work relating to opening the estate, including time entries for meeting with the Greer family and drafting the petition. *Id.* Ms. Chambers billed 4.0 hours after filing the appropriate probate documents, including time entries related to closing the estate and disbursing funds. *Id.* Petitioner does not request any award pertaining to maintaining the estate or administering funds in the future.

Petitioner also requests reimbursement for costs, amounting to $2,118.64. Fees App. at 3. The total cost requested reflects expenses for medical records requests, mailing fees, estate and mileage fees, and the filing fee. *Id.* The estate costs requested include the $57.00 initial probate fee and the $65.00 fee for publishing the probate notice to creditors (representing a total of $122.00 for estate costs). *See* Ex. C. to Fees App. at 23-24.

---

[3] While the billing log does not specific what funds were disbursed, I will infer that the log is referring to the stipulation filed in this matter, as judgment entered on the stipulated to award on April 27, 2017, two months prior to the disbursement noted in the billing log. *See* ECF No. 20.

Respondent filed a response reacting to the fees request on September 28, 2017, indicating that she was satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring to my discretion the determination of the amount to be awarded. ECF No. 24 at 2-3. Petitioner contacted chambers on October 9, 2017, and notified my clerk that she did not intend to file a reply.

After my review of the final fees request, I identified two issues that required resolution before I could act on the request. First, Petitioner's counsel was requesting fees commensurate with forum rates paid based upon *McCulloch*. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[4] However, there were no existing decisions setting forth the proper hourly rate for Vaccine Program lawyers practicing in Birmingham, Alabama. Second, as noted above Petitioner sought reimbursement for estate work performed prior to the claim's initiation - a kind of attorney work for which it was unclear whether the Program would pay. I therefore held a status conference and ordered the parties to address these matters. *See* Non-PDF Scheduling Order, dated Nov. 2, 2017.

In response, Petitioner filed a supplemental document on December 4, 2017, addressing whether the attorneys representing the Ragsdale firm are entitled to forum rates and whether the work completed by the estate attorney is compensable under the Vaccine Program. *See* Memorandum, filed on Dec. 4, 2017 (ECF No. 27). Based on a survey of case law in the relevant jurisdiction, and based on the experience of the attorneys who worked on the matter, Petitioner argued that the Ragsdale Firm is entitled to forum rates. *Id.* at 5, 10.

Petitioner further argued that counsel was entitled to be reimbursed for the attorney fees expended while opening an estate for Mr. Greer because the estate fees and costs were "incurred" during the proceeding on the petition. *Id.* at 13. Petitioner cited to relevant past Vaccine Program cases awarding estate fees and costs associated with opening an estate. *Id.* at 13-14; *see Capriola v. Sec'y of Health & Human Servs.*, No. 08-835V, slip op. (Fed. Cl. Spec. Mstr. Apr. 29, 2010) (awarding estate fees where probate expenses were incurred to comply with § 15(a)(2) of the Vaccine Act); *Sampt v. Sec'y of Health & Human Servs.*, No. 07-122V, 2011 WL 1629661 (Fed. Cl. Spec. Mstr. Mar. 29, 2011) (awarding estate fees where petitioner died during the pendency of the action and where representative capacity was required in order to receive the stipulated award); *Shook v. Sec'y v. Health & Huma Servs.*, No. 08-732V, 2011 WL 845910 (Fed. Cl. Spec. Mstr. Feb. 15, 2011) (awarding estate fees where costs were incurred while the case was pending and, thus "in a proceeding on the petition," in order to receive the stipulated award). Petitioner also filed an affidavit from the estate attorney who maintained that the estate was opened for the sole purpose of commencing the vaccine claim. *See* Ex. E to Pet'r's Brief in Support of Fees App. (ECF

---

[4] *See also* Office of Special Masters Attorney's Forum Hourly Rate Fee Schedule: 2017 (available at http://www.uscfc.uscourts.gov/node/2914).

No. 27-1) at 2.

Furthermore, Petitioner argued that the Vaccine Act specifically requires that Ms. Greer be the legal representative of the estate in order to maintain the claim. *Id.* at 14; *see* 41 U.S.C. § 300aa-11(b)(1)(A) ("[T]he legal representative of any person who died as the result of the administration of a vaccine . . . may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program."). Petitioner also maintained that the language included in the settlement Stipulation filed in this case requires that Ms. Greer be the authorized representative in order to accept the award. *Id.*

Thereafter, Respondent filed a response on December 5, 2017. *See* Response, filed Dec. 5, 2017 (ECF No. 28). As to forum rates, Respondent specifically deferred to my discretion as to the rate determination. *Id.* at 1. Respondent otherwise deferred to my discretion with regard to the requested estate costs in determining if the costs were incurred in a proceeding on the petition, inconformity with the Vaccine Act. *Id.* at 2.

## Analysis

### I. Relevant Law Governing Attorney's Fees

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of "reasonable" attorney's fees and costs. Section 15(e)(1). To this end, special masters have discretion in determining what a reasonable fees award is, and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009).

Determining the appropriate amount of a fees to award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera,* 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis*

*Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). As the Federal Circuit stated in *Avera*, inclusion of the *Davis* exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at 1349.

After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella*, 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

**II. The Ragsdale Firm Should Receive Forum Rates**

With all of the above in mind, I turn to Petitioner's requested rates in this matter. Based on their own review of the relevant case law, the Ragsdale Firm argues that Birmingham, Alabama is an in-forum locale, and has offered case law to support this assertion. *See, e.g.*, *Parker v. Healthcare Inv. Group, Inc.*, No. 5:14-CV-2247, 2017 WL 4222626, at *9 (N.D. Ala. Sept. 1, 2017); *Whitford v. Sub-Line Associates, Inc.*, No. CV-15-BE-1678, 2017 WL 3620367, at *3-4 (N.D. Ala. Aug. 23, 2017); *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 1277, 1294-95 (N.D. Ala. Mar. 11, 2014); *Ritcher v. Dolgen Corp., Inc.*, No. 7:06-CV-01537, 2014 WL 6645542, at *3 (N.D. Ala. Nov. 24, 2014); *see also* Pet'r's Brief in Support of Fees App. (ECF No. 27) at 10.

In prior decisions involving whether an attorney should receive a forum rate, I have looked to federal district court decisions from the relevant geographic location to assess what attorney's receive for fee awards doing work comparable to that performed in Vaccine Act cases. *See, e.g., Dezern v. Sec'y of Health & Human Servs*., No. 13-643V, 2016 WL 6678496 (Fed. Cl. Spec. Mstr. Oct. 14, 2016). While there are many federal fee-shifting statutes that provide for attorney's fees, not all work performed under such statutes is the equivalent. Although Vaccine Act work can involve complex scientific and medical matters, the actual attorney work has long been deemed somewhat less demanding, given the relaxed evidentiary standards, absence of discovery and attendant disputes, and role the special masters play in helping resolve cases. *See Dezern*, 2016 WL 6678496, at *4 (citing *Rodriguez v. Sec'y of Health & Human Servs*., 632 F.3d 1381, 1384 (Fed. Cir. 2011)). As a result, district court fees awards from the lawyer's practice locale and under federal statutes involving attorney work comparable to that performed in the Vaccine Program are the proper benchmark for evaluating whether an attorney's hourly rate would be deemed a forum rate in the Program. *See Ochoa v. Sec'y of Health & Human Servs.*, No. 16-627V, 2017 WL 6350600, at *3-4 (Fed. Cl. Spec. Mstr. Nov. 1, 2017); *Rivera v. Sec'y of Health & Human Servs.*, No. 15-487V, 2017 WL 2460690, at *3 (Fed. Cl. Spec. Mstr. Apr. 20, 2017); *Dezern*, 2016 WL 6678496, at *5.

I have reviewed Petitioner's citations on proposed rates, in addition, and in keeping with my inquisitorial role in deciding the matters before me, I have conducted my own review of a sampling of federal fees decisions from Alabama district courts applying Birmingham rates, which suggest a wide variety of awards, depending on the nature of work performed, under comparable fee-shifting statutes. As the chart below illustrates, rates range from $50 per hour to $625 per hour depending on position and experience:

| Case Name | Claim Type | Rate | Attorney's Experience |
|---|---|---|---|
| *Pettus v. Fine Line Racing, Inc.*, No. 2:16-cv-01263-RDP, 2017 WL 3624256, at *4 (N.D. Ala. Aug. 23, 2017). | FLSA* | $350/hr | Partner (17-20 years) |
| *Richter v. Dolgencorp., Inc.*, No. 7:06-cv-01337, 2014 WL 6645542, at *3 (N.D. Ala. Nov. 24, 2014). | | $380/hr<br>$50 | Partner<br>Paralegal |
| *Briggins v. Elwood TRI, Inc.*, No. 1:08-cv-1861-KOB, 3 F. Supp. 1277, 1294-95 (N.D. Ala. Mar. 11, 2014). | | $625/hr<br>$525<br>$450<br>$275<br>$200 | Partner (38+ years)<br>Partner (25+ years)<br>Partner (20+ years)<br>Associate (6-7 years)<br>Associate (1-4 years) |
| *Richardson v. Boyd Schools, Inc.*, No. 7:14-cv-00023-WMA, 2014 WL 1577015, at *3 (N.D. Ala. Apr. 15, 2014). | | $225 | Associate (9 years) |
| *Fox v. Tyson Foods, Inc.*, No. 4:99-cv-1612-VEH, 2009 WL 9541256, at *16 (N.D. Ala. Feb. 17, 2009). | | $550/hr<br>$200-400<br><br>$110 | Partner<br>Associate<br><br>Paralegal |
| *Moore v. Dynamic Recovery Services, Inc.*, No. 2:13-cv-00681-WMA, 2014 WL 507384, at *6-7 (N.D. Ala. Feb. 6, 2014). | FDCPA* | $300/hr | Mid-level Associate (15-20 years) |
| *Carter v. Medicredit, Inc.*, No. 2:11-cv-01272, 2012 WL 4329294, at *5 (N.D. Ala. Sept. 18, 2012). | | $375/hr | Mid-level Associate (15 years) |

| | | |
|---|---|---|
| * Fair Labor Standards Act (FLSA); Federal Debt Collection Practices Act (FDCPA) | | |
| | | |

After consideration of the aforementioned law and facts, I conclude that the difference between the local rates in Birmingham awarded under comparable fee-shifting statues and the forum rates are insufficiently different to apply the *Davis* exception. For example, the low-end forum rate for an attorney with comparable experience (to Mr. Ragsdale's 20+ years of practice) is $350 per hour. *McCulloch,* 2015 WL 5634323, at *19. That amount is not significantly different from what an Alabama attorney in the Birmingham area would be paid for comparable work under a federal fee-shifting statute. Because the *Davis* exception will not apply, I will award the Ragsdale Firm in-forum rates.

### III. Attorney's Fees and Costs to be Awarded to Counsel

In light of the above, I find the rates requested by the Ragsdale Firm to be reasonable and consistent with the rates set forth in *McCulloch*. Petitioner requests a rate of $385 per hour for Mr. Ragsdale (thirty-five years of experience) for work performed in 2015-2016, and $400 for work performed in 2017; $225 per hour for Ms. Riley (six years of experience) for work completed in 2015, $250 for work completed in 2016, and $270 for work completed in 2017; $325 per hour for work performed by Ms. Chambers (fourteen years of experience) from 2015-2017; and $275 per hour for Ms. Daniels (eight years of experience) for work completed in 2015. Finally, Petitioner requests $125 per hour for the work of two paralegals for work completed in 2015, and $135 for work completed in 2016-2017. These requested rates are consistent with the rates set forth in *McCulloch* and will be awarded in full. *See McCulloch,* 2015 WL 5634323, at * 19.

Petitioner also requests $2,167.24 for costs related to this matter. Specifically, Petitioner requests $1,506.14 for medical record expenses, $34.50 for mailing charges, $56.00 for mileage reimbursement, and $400.00 for the filing fee. *See* Fees App. at 3. The costs related to this matter appear to be reasonable, and will be awarded in full.

### IV. Estate Fees and Costs to be Awarded

Petitioner also requests that the Ragsdale Firm be reimbursed for the work of two attorneys for a total of 11.7 hours related to estate work on this matter (8.7 hours for Ms. Chambers and 3.0 hours for Ms. Daniels). *See* Ex. A to Fees App at 14.

Generally, the Vaccine Act does not "provide attorney fee awards to cover the myriad legal implications of establishing or administering an estate." *Siegfried v. Sec'y of Health & Human Servs.*, 19 Cl Ct. 323, 325 (1990) (finding that the special master properly determined that attorney's fees for letters of administration and probate proceedings should be paid out of the estate); *Lemon v. Sec'y of Health & Human Servs.*, 19 Cl. Ct. 621, 623 (1990) (denying estate fees for post-petition letters of administration and post-petition probate of the estate). Rather, reasonable fees should be awarded for work performed "*during the pendency* of a petition before a special master." *Id.* (emphasis added); *see also Sampt v. Sec'y of Health & Human Servs.*, No. 07-122V, 2011 WL 1629661 (Fed. Cl. Spec. Mstr. Mar. 26, 2011); *Mol v. Sec'y of Health & Human Servs.*, 50 Fed. Cl. 588, 591 (2001); Section 15(e)(1)(B). Costs incurred without a court order or without involvement by the respondent are generally not deemed to have been incurred on the petition, and thus do not warrant compensation. *Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910 (Fed. Cl. Spec. Mstr. Mar. 25, 2004) (denying guardianship fees where petitioner established guardianship for purposes unrelated to the vaccine and the guardianship was not required by the court); *Mol*, 50 Fed. Cl. at 591 (rejecting a "but for" theory for expenses relating to probate matters, as it would be too broad).

More recently, however, special masters have varied in their reasoning for awarding estate fees. *See, e.g., Bennett v. Sec'y of Health & Human Servs*, No. 15-65V, 2017 WL 3816094, at *4 (Fed. Cl. Spec. Mstr. Aug. 7, 2017) (awarding partial estate fees for establishing the estate as this was required by the Vaccine Act § 11(b)(1)(A) prior to filing the petition, but denying estate costs associated with estate administration); *Putnam v. Sec'y of Health & Human Servs.*, No. 16-1273V, 2017 WL 3472819 (Fed. Cl. Spec. Mstr. July 18, 2017) (awarding estate fees for a deceased minor, but making no mention of timing as it relates to the filing of the petition); *Shook v. Sec'y of Health & Human Servs.*, No. 08-732V, 2011 WL 845910, at *2 (Fed. Cl. Spec. Mstr. Feb. 15, 2011) (awarding estate establishment fees for a deceased minor where costs were incurred while the case was pending but before judgment was entered); *Sampt*, 2011 WL 1629661, at *2 (awarding estate fees where petitioner died during proceedings on the petition); *Capriola*, No. 08-835V, slip op., at *3 (awarding estate fees where probate expenses were incurred to comply with § 15(a)(2) of the Vaccine Act).

It is important to note, however, that some special masters will award attorney fees for estate formation based on respondent's stipulation, which requires petitioner to establish representative capacity in order to receive payment of the Vaccine award. *See Bennett v. Sec'y of Health & Human Servs.*, No. 15-65V, 2017 WL 3816094 (Fed. Cl. Spec. Mstr. Aug. 7, 2017); *Ramsey v. Sec'y of Health & Human Servs.*, No. 09-896V, 2012 WL 5205835 (Fed. Cl. Spec. Mstr. Sept. 24, 2012) (applying the same reasoning to guardianship costs); *Sampt*, 2011 WL 1629661, at *2; *Shook*, 2011 WL 845910, at *2. However, in this case, when Petitioner opened the estate, the petition had not been filed; thus, no stipulation existed at that time.

Some cases do suggest that there are times when an award of estate fees is not appropriate. *See Widdos v. Sec'y of Health & Human Servs.*, No. 90-486V, 1992 WL 80809, at *2 (Fed. Cl. Spec. Mstr. Mar. 31, 1992) (denying fees related to opening an estate on behalf of petitioner, as neither letters of administration nor the probate proceedings are under the vaccine petition); *Siegfried,* 19 Cl Ct. at 325 (finding that the special master properly determined that attorney's fees for letters of administration and probate proceedings should be paid out of the estate); *Lemon*, 19 Cl. Ct. at 623 (denying estate fees for post-petition letters of administration and post-petition probate of the estate).

Here, Mr. Greer died, and the estate was established, *prior* to the filing of the action. The estate attorney opened the estate four days after Mr. Greer died, on March 28, 2015, roughly a year and half before the petition was filed. Thus, this case is distinguishable from cases awarding estate fees where the petitioner died during the pendency of the action or where the estate was established during the lifespan of the case. *See, e.g., Sampt*, 2011 WL 1629661, at *2 (awarding estate fees where petitioner died during proceedings on the petition); *Shook*, 2011 WL 845910, at *2 (awarding estate fees for a deceased minor where costs were incurred while the case was pending and before judgment was entered). This case is also distinguishable from cases awarding estate fees where the stipulation required representative capacity in order to receive the award, as no stipulation existed prior to the filing of the petition. *See, e.g.*, *Shook*, 2011 WL 845910, at *2; *Sampt*, 2011 WL 1629661, at *2. Furthermore, I do not find persuasive Petitioner's argument that the Vaccine Guidelines require that an estate be established prior to the petition being filed.

It is unclear from the billing record if the estate was opened for purpose of pursuing this claim, although the amount of time billed is not extensive. However, I do find weight in the affidavit filed by the estate attorney, stating that the estate was opened for the sole purpose of filing the vaccine claim *See* Ex. E to Pet'r's Brief in Support of Fees App. (ECF No. 27-1) at 2. Although the estate was opened prior to the filing of the Petition, the affidavit in support is persuasive when determining if the cost was incurred on the Petition.

In a recent estate attorney fees decision, Special Master Roth awarded estate fees related to *establishing* the estate, finding that estate fees can be "an essential prerequisite condition to obtaining an award . . ." *Bennett v. Sec'y of Health & Human Servs.*, No. 15-65V, 2017 WL 3816094, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2017) (internal quotations omitted); *see also* § 11(b)(1)(A). Special Master Roth reasoned that costs incurred in appointing a legal representative of the estate are necessary for a petitioner to proceed with a claim alleging that a death resulted from a vaccine. *Id.* at *4. More specifically, the special master found "these costs are compensable, as these actions were required by the Vaccine Act prior to filing the petition." *Id.*

However, in that same opinion, the special master found that fees and costs related to *administration* of the estate were not compensable, as they were probate matters unrelated to the vaccine petition. *Id.* at *5. The special master concluded that administration fees "involve a wide variety of probate matters in collateral state court proceedings that are unrelated to the vaccine petition itself." *Id.* at *4 (citing *Haber*, 2011 WL 839111, at *2) (quotation marks omitted). I find Special Master Roth's reasoning in *Bennett* to be persuasive and will apply the same standards in the present case.

Considering all of the above, I will make one reduction to Petitioner's requested estate fees. In light of my decision to award Petitioner estate fees relating to establishment, and not administration, I find that certain work performed by Ms. Chambers is not compensable, as it relates to estate administration. More specifically, I find the last four hours listed on Ms. Chambers's billing log to be estate administration work (including drafting closing documents, disbursing funds, and conferring with the client regarding this work). This determination is consistent with Special Master Roth's determination in *Bennett*, and my own determination in an estate fees case concerning guardianship fees. *See Bennett*, 2017 WL 3816094, at *4-5; *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *5-6 (Fed. Cl. Spec. Mstr. May 13, 2014) (awarding guardianship fees associated with the cost of creating the guardianship, but denying fees related to administration post-establishment because they were not incurred on the vaccine petition). Therefore, I will reduce the total award of estate attorney fees by four hours (with the reduction applied to Ms. Chambers's rate of $325 per hour). This reduction represents an overall estate fees reduction of $1,300.00.

This matter presents a close case, especially given the existing Court precedent (even if it does not bind me[5]) suggesting that estate fees not incurred *during* the proceeding are not compensable. Because of the nature of the Program's fees provisions and the role special masters play in determining the proper amounts of fees to reimburse, claimants should avoid incurring costs and fees that are arguably tangential to the prosecution of their claim - and they should certainly not make unilateral decisions about the propriety of such costs. Here, however, it does appear based on the evidence submitted (which has not been challenged by Respondent) that Petitioner opened the estate for the sole purpose of filing the vaccine claim - and it is foreseeable that had Petitioner not done so, Respondent likely would have required Petitioner to so act before any award was issued. Moreover, it appears that estate fees are a typical expense reimbursed under wrongful death statutes in many states. *See, e.g., Hatwood v. Hospital of the Univ. of Pa.*, 55 A.3d 1229, 1235 (Pa. 2012); *Dunkelbarger Const. Co. v. Watts*, 488 N.E.2d 355, 359 (Ind. Ct. App.

---

[5] In this Decision, I reference or rely upon both the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998), *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999). Federal Circuit decisions, however, are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 F..App'x. 712 (Fed. Cir. 2004).

11

1986). And the hours expended herein appear to have been reasonable, and the total amount requested is not excessive.

Accordingly, I will award the amount requested for estate attorney's fees related to establishing the estate, in the amount of $2,352.50 (representing the time billed for estate matters, $3,652.50, minus the $1,300.00 reduction for estate administration work).

Petitioner also requests costs related to estate work, including fees for probating Mr. Greer's will and publishing the probate notice (representing a total of $122.00 for the probate fee and the publication notice fee). *See* Ex. C. to Fees App. at 23-24. These costs are related to opening the estate; thus, I will award Petitioner those costs as well.

## Conclusion

I hereby GRANT Petitioner's motion for attorney's fees and costs. Accordingly, an award **$60,733.99** ($58,566.75 in attorney's fees, plus $2,167.24 in costs) should be made in the form of a check payable jointly to Petitioner and Petitioner's counsel, Milton Clay Ragsdale, Esq. Payment of this amount represents all attorney's fees and costs available under 42 U.S.C. § 300aa-15(e). In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.